**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joochul Kim, | No. CV 04-1931-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Arizona Board of Regents, et al., | |
| Defendants. | |

Plaintiff has filed an amended complaint asserting claims for national origin discrimination (Count I), race discrimination (Count II) and retaliation (Count III), all under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., race and national origin discrimination under 42 U.S.C. § 1981 (Count IV), and violation of civil rights under 42 U.S.C. § 1983 (Count V). Defendants are the Arizona Board of Regents, Arizona State University, Michael Crow, John Meunier, and Alvin Mushkatel. (Doc. 20). Plaintiff's claims in Counts I through III based on Title VII and his § 1981 claim in Count IV are asserted

against Defendants Arizona Board of Regents and Arizona State University.[1] Plaintiff's § 1983 claim in Count V is asserted against Defendants Crow, Meunier and Mushkatel.

The parties have filed cross motions for summary judgment with appropriate responses, replies and statements of supporting facts. (Doc. 53-56, 58-62). The Court heard oral argument on the cross motions for summary judgment on September 8, 2006 and now enters this Order.

I.

Standard of Review.

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e). See also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986).

II.

Background Facts.

Plaintiff is an Associate Professor in the School of Planning at Arizona State University ("ASU"). The School of Planning is in the College of Environmental Design, formerly the School of Architecture. Plaintiff has been employed with ASU since 1980. He was promoted from Assistant to Associate Professor with tenure in 1985. As a professor of

---

[1] Individual employees cannot be held liable under Title VII. Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993).

- 2 -

urban planning, Plaintiff's focus was on research in Korean and Asian urban planning and development.

In 1987, Plaintiff returned from a sabbatical year in Korea. When Plaintiff returned to ASU, Defendant John Meunier had been hired as the Dean of the College of Architecture. Plaintiff felt something was against him from Dean Meunier's office. Plaintiff opposed Dean Meunier's hiring of Dr. Frederick "Fritz" Steiner as the new director of the School of Planning. Plaintiff felt singled out by Dean Meunier and Dr. Steiner thereafter.

In January 1990, Plaintiff began working on special projects for the President of the University, Lattie Coor. Plaintiff continued in this arrangement until President Coor retired in 2000. It was Plaintiff's intent to become a provost of the University by working on special projects outside the School of Planning. During this ten-year period, Plaintiff taught few courses in the School of Planning. The School used Plaintiff's salary savings to hire faculty associates and to replace Plaintiff.

In August of 2000, Plaintiff applied to be full professor in the School of Planning. Following university procedure, Plaintiff's application was considered by six levels of review. Each level reviewed the application de novo but with access to the reports of each preceding level. The review was based on the application and materials Plaintiff submitted on his scholarship, teaching, and service. The six levels of review are as follows: (1) the School Personnel Committee consisting of all tenured professors in the School of Planning; (2) the Director of the School of Planning; (3) the College Personnel Committee consisting of one representative from each of the three schools within the College; (4) the Dean of the College; (5) the University Promotion and Tenure Committee; and, (6) the Provost of the University, on behalf of the President. The final decision denied Plaintiff's promotion application.

Plaintiff filed a grievance which was considered by the Committee on Academic Freedom and Tenure ("CAFT"). The CAFT concluded that Plaintiff's application should be "re-reviewed" because the School of Planning did not have specific criteria for promotion to full professor, and because three full professors (including Professors Alvin Mushkatel

1  (Defendant) and David Pijawka) had participated in the review at the request of the Director
2  even though the three full professors were on sabbatical or leave.  The Committee also was
3  concerned that Associate Professors Theresa Cameron and Ruth Yabes had complained of
4  intimidation by full professors and had resigned from the review.  The Committee
5  recommended a new hearing with participation by a neutral faculty member as observer.

6  President Coor accepted the Committee's decision on Plaintiff's grievance and the
7  Provost set up a re-review. Regents Professor of Exercise Science Dan Landers was
8  appointed as observer and the School developed criteria for considering the promotion to full
9  professor.  On re-review, the same six levels considered Plaintiff's application and new
10 reports were written by each level.  However, various members of the faculty constituting
11 the levels had changed.  The Chair of the Personnel Committee in 2000 had been Professor
12 Richard T. Lai.  In 2002, the Chair of the Personnel Committee was Professor Pijawka.
13 Professor Hemalata Dandekar replaced Mary Kihl as Director, School of Planning and
14 Architecture. Ron McCoy replaced Defendant Meunier as Dean. The Chair of the University
15 Promotion and Tenure Committee also had changed.  The Chair in 2001 had been Robert
16 Oldani.  (Doc. 54, Exhibit 2).  The Chair in 2003 was Robert Bjork.  (Doc. 54, Exhibit 5).
17 Professor Milton Glick, Sr., served as Provost during the review and was consulted on re-
18 review by the President.  Professor Gail Hackett appears to have been consulted by the
19 Provost during the review and by the President on re-review. Defendant Michael Crow had
20 replaced President Coor.

21 Upon re-review, the seven-member School Personnel Committee voted to recommend
22 Plaintiff's promotion.  (see Doc. 69, pages 3-4). The Chair of the School Personnel
23 Committee on re-review, Professor  Pijawka, who had participated in the 2000 review,
24 changed his vote from negative to positive.  The Director of the School, the three-member
25 College Personnel Committee, and the Dean of the College voted in favor of promotion.  The
26 ten member University Promotion and Tenure Committee voted nine to zero against
27 Plaintiff's application, with one abstention. The reason for the adverse vote of the University
28 Promotion and Tenure Committee was stated as "the committee observed that the candidate's

having spent 10 years in the President's Office contributed substantially to his inability to meet the department guidelines for promotion, especially in the area of research." (Doc. 54, Exhibit 5 at page 4). During his deposition testimony, President Crow described the University Promotion and Tenure Committee as "all senior faculty members ... [who] have their own experience to bring to bear, so we ask them to be a quality control committee."

Defendant Michael Crow, Ph.D., became President of Arizona State University on July 1, 2002. He previously had been at Columbia University where for eleven years he served as Professor of International and Public Affairs and Executive Vice Provost. At Columbia, Dr. Crow had participated in the tenure review process as chair and/or member of the university ad hoc committee, and as a reviewer of an applicant's scholarly work, both at Columbia and at outside institutions. Dr. Crow participated only in Plaintiff's re-review process because he had not become President when the original application was considered. Dr. Crow testified that re-review is a common practice. (Doc. 54, Crow Deposition at page 26). Dr. Crow read only the 2002 materials, stating that it was the first time he had encountered the case. (Doc. 59, Crow Deposition at pages 105, 108, 110). As part of the re-review process, Dr. Crow met with the Provost of the University and the Vice Provost for Academic Affairs, and reviewed Plaintiff's entire package of materials. Dr. Crow testified that he made his own analysis of the situation and decided that Plaintiff was not ready to be advanced for promotion because there was insufficient evidence of "professor behavior, which is national stature." (Doc. 54, Crow Deposition at pages 18-21, 52).

Professor Alvin Mushkatel, also a Defendant, returned from sabbatical in the initial review at the request of the Director of the School of Planning. Plaintiff testified during his deposition that Defendant Mushkatel "was actively campaigning against [him] first time and second time" based on what others had told Plaintiff. Plaintiff testified that he could only concur that Professor Mushkatel was against him because of Plaintiff's national origin, "because I'm a Korean scholar, or I'm an Asian-American. I don't see any other reason because I haven't done anything to cause ill [feelings] between himself and myself." Plaintiff further testified that he did not believe that Professor Mushkatel could conclude that he was

- 5 -

1 not qualified "as a matter of academic judgment" because "any individual looking at my record, they should say, 'He's more than qualified.'"

Plaintiff claims that Defendant, Dean John Meunier, who participated in the review only, had an improper bias against him.

Plaintiff testified that President Crow had "changed the process and procedures while [his] case was moving on" by making the final decision on re-review, whereas on review "the decision was made by the Provost." As for whether the University Promotion and Tenure Committee which voted nine to zero against his application on re-review was biased against him based on a directive from the President, Plaintiff testified "I think it has to be coming from somewhere."

As part of his facts in support of summary judgment, Plaintiff states that during the time he was working on special projects, he wrote and published a major book and published several articles in major first tier journals. Plaintiff claims that Professor Mushkatel, a former professor in the School of Planning and Landscape Architecture, singled out a Korean student in his class and treated the student unprofessionally. Professor Mushkatel allegedly derided the Korean student and claimed that the student was inadequate. The Korean student passed both written and oral Ph.D. comprehensive exams and is to be published as a graduate student. Professor Pijawka of the School of Planning and Landscape Architecture testified during deposition that this same Korean student came to him as head of the Ph.D. Dissertation Committee and complained about how he was treated in class by Professor Mushkatel. Professor Pijawka also testified that Dr. Mushkatel had used language that suggested certain racist epithets against another Asian American professor in the School of Planning and Landscape Architecture.

Associate Professors Theresa Cameron, Ruth Yabes, and Edward Cook, all tenured faculty members of The School of Planning and Landscape Architecture at the time of these events, have submitted Declarations in support of Plaintiff. Plaintiff cites the Declarations of these faculty members as indicating that the 2000 and 2002 deliberations were unfair, biased and discriminatory.

- 6 -

Professor Cameron in her Declaration (Doc. 56, Exhibit 4) faults herself for a "lack of courage and integrity" during both the 2000 review and the 2002 re-review. Professor Cameron states that as for the 2000 review, "Professor Alvin Mushkatel tried to influence my vote." She has described several alleged irregularities in the 2000 review process such as, for example, the Director of the school committee did not allow a proxy from another faculty, "[t]he committee minimized Professor Kim's work in international scholarship," Professor Lai did not provide leadership during the deliberations, and the review process did not have a quorum. The general tone of Professor Cameron's Declaration is that Professor Mushkatel spoke against Plaintiff. Professor Cameron has expressed the opinion that Professor Mushkatel was "biased" against Plaintiff and that his actions "can be viewed as racist." Regarding the re-review, Professor Cameron stated that "[s]ome of the members on the school committee again did not respect Professor Kim's scholarship in Korea, particularly his book." She has offered her belief that Professor Mushkatel had a "blind bias" against Plaintiff "being a Korean American scholar" which "probably" motivated Mushkatel "to harm" Plaintiff. Professor Cameron cites allegedly critical comments Professor Mushkatel made about Plaintiff and Professor Lai but does not state the content of those alleged comments. She also cites alleged negative comments that Professor Mushkatel made about a Korean student.

According to the Declaration of Professor Yabes, she did not participate in the 2000 review, stating that she resigned because she felt intimidated by a statement by another professor who intended to vote against Plaintiff and because three full professors were permitted to participate in the promotion committee meetings even though they were on sabbatical or administrative leave. (Doc. 56, Exhibit 5). Professor Yabes stated that from 1990 through 1999, she had observed Dr. Steiner's "strong dislike and racist attitude" toward Plaintiff. Professor Yabes participated in the 2002 re-review and has expressed the opinion that Plaintiff did not receive an impartial review. Professor Yabes states that Subhro Guhathakurta "in particular was vehemently against giving any research credit" for Plaintiff's

1 book. She notes that other committee members "disparaged" Plaintiff's work "without
2 justification."

3       Professor Cook in his Declaration states that he chose to withdraw from the 2000
4 review because he felt the process had become compromised. (Doc. 56, Exhibit 6). It
5 appears that Professor Cook had the same concerns as Professor Cameron discussed above.
6 Professor Cook further states that regarding his participation in the 2002 re-review, he had
7 been impressed by Plaintiff's overall record and scholarship. Professor Cook further states
8 that "[t]he deliberations of the committee were generally quite positive concerning teaching
9 and service contributions, however, several committee members seemed unwilling to accept
10 the legitimacy of the research, since [Plaintiff's] scholarship focused principally in Asia."
11 Professor Cook states in his Declaration that he "observed numerous irregularities in the
12 process, a concerted effort by several individuals to introduce bias and an unwillingness to
13 accept scholarship done by an Asian American focusing on topics important to urban
14 planning in Asia."

15       Plaintiff also has provided the Declaration of Professor Emeritus Michael D.
16 Kroelinger of the College of Design. (Doc. 56, Exhibit 11). During the fall of 2002,
17 Professor Kroelinger served as one of three members of the College Personnel Committee
18 charged with the re-review of Plaintiff's promotion to full professor. The other two members
19 were Professor R. Nicholas Loope representing the School of Architecture and Professor
20 Mushkatel (Defendant) representing the School of Planning. The Committee's deliberations
21 on Plaintiff were conducted with an outside observer, Professor Dan Landers.

22       Professor Kroelinger states in his Declaration that the committee action was difficult
23 due to three issues: "1) it was a re-review using application materials from a previous review
24 (in other words, not current), 2) the School of Landscape Architecture & Planning action and
25 process did not seem to be conducted in an appropriate manner, and 3) no clear evidence
26 existed to support the activities and accomplishments of the candidate while assigned to the
27 President's Office at ASU." Professor Kroelinger states that the committee "depended
28 heavily on the School representative (Mushkatel in the case of the Kim review) for

- 8 -

information about relevancy of the published work and on the recommendations of the School Committee and of the Director, respectively." According to Kroelinger, "[t]he committee voted to unanimously support the promotion recommendation but was reluctant in the deliberations due to the three issues" cited in his Declaration. ..."Basically, the materials provided, including those from the School Committee, did not present a clear recommendation in which more than a 'reluctant' decision could be based." The report of the College Personnel Advisory Committee dated November 29, 2002 and addressed to Ron McCoy, Interim Dean, expressed the Committee's recommendation, including its concerns, in greater detail. (Doc. 56, Exhibit 22).

Plaintiff has provided the reports of four external reviewers who stated that Plaintiff is nationally and internationally recognized and should have been promoted to full professor. The external reviewers are chosen by the University from a list provided by the University and a list provided by the candidate.

Professor Mary Kihl who participated in the 2000 review has stated that Plaintiff met the criteria for promotion to full professor and should have been promoted. Professor Hemalata Dandekar and Dean McCoy who participated in the 2002 re-review have stated that Plaintiff met the criteria for promotion to full professor and should have been promoted. Dean McCoy's report dated January 6, 2003 is addressed to Milton O. Glick, Sr., Executive Vice President and Provost of ASU. (Doc. 56, Exhibit 17).

Plaintiff has cited the deposition testimony of Professor Meunier as stating that Plaintiff's book was weak on urban planning even though Meunier further testified that he knew nothing about urban planning. Professor Meunier during his deposition testimony stated that Plaintiff's 1997 book "was disappointing." Professor Meunier further stated that he thought "it was an extraordinary opportunity to tell a very interesting story about the growth of one of the world's great metropolises, and Seoul is a very, very important global city and a country with a very rich and deep history, and I was hoping for a book that would leave me very richly informed, and I didn't find that." Professor Meunier testified that he had not written or co-authored an academic book published by a major publishing house.

Professor Meunier testified that "urban form" is "something I do know something about". He described his view of the deficiency in Plaintiff's book as follows: "There is a difference between work which is purely descriptive and work which is more interpretive and contributes to the development of theories that inform the discipline. I found this book to be predominantly descriptive." (Doc. 56, Exhibit 18 - Deposition of John Meunier at pages 54-57).

III.

Discussion.

Defendants have moved for summary judgment as to all of Plaintiff's claims asserted in the amended complaint. Plaintiff has filed a cross motion for summary judgment on the issue of liability. Plaintiff contends that the uncontroverted evidence shows that the promotion process provided to Plaintiff was impermissibly tainted by irregularities and illegal discriminatory animus.

(A) Plaintiff's Title VII and § 1981 Claims Based on National Origin and Race Discrimination.

Title VII prohibits discrimination in employment on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. "A person suffers disparate treatment in his employment ' "... when he or she is singled out and treated less favorably than others similarly situated on account of ..."'" race or national origin. Cornwell v. Electra Central Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006)(quoted citations omitted).

The plaintiff bears the initial burden of establishing a prima facie case of discrimination. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir. 1996). Plaintiff may establish a prima facie case of discrimination either through evidence showing the employer intended to discriminate or through a presumption arising from proof of the McDonnell factors. Villodas v. HealthSouth Corp., 338 F. Supp. 2d 1096, 1101 (D. Ariz. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973) and Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)). Plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he

1 suffered an adverse employment action; and (4) similarly situated individuals outside his
2 protected class were treated more favorably, or other circumstances surrounding the adverse
3 employment action give rise to an inference of discrimination. See Fonseca v. Sysco Food
4 Services of Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004).  The plaintiff in an employment
5 discrimination case "need produce very little evidence in order to overcome an employer's
6 motion for summary judgment." Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d
7 1115, 1124 (9th Cir. 2000). The plaintiff need only offer evidence that "gives rise to an
8 inference of unlawful discrimination." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.
9 1994) (quoting Lowe v. City of Monrovia, 775 F.2d 998,1005 (9th Cir. 1985)).

10      The standard summary judgment principles apply, and a shifting burden analysis is
11 used. Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir. 1990). Throughout, the
12 plaintiff retains the burden of persuasion. Texas Dep't of Community Affairs v. Burdine, 450
13 U.S. 248, 253 (1981).  If the plaintiff succeeds in making a prima facie showing of illegal
14 discrimination, then a presumption is created that the employer undertook the challenged
15 action because of an illegal reason, such as the plaintiff's race or national origin. McDonnell
16 Douglas Corp., 411 U.S. at 802. To rebut this presumption, the defendant must produce
17 admissible evidence showing that the employment action was undertaken for a "legitimate,
18 nondiscriminatory reason." Id.  The burden is one of production, not persuasion, and does
19 not involve a credibility assessment. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.
20 133, 142 (2000) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

21      The burden then shifts back to the plaintiff to prove that the legitimate reason
22 proffered by the  defendant is a pretext for discrimination. Reeves, at 143. A plaintiff may
23 offer evidence, direct or circumstantial, "that a discriminatory reason more likely motivated
24 the employer" to make the challenged employment decision. Cornwell, 439 F.3d at 1028
25 (citing Burdine, 450 U.S. at 256). Alternatively, the plaintiff may offer evidence "that the
26 employer's proffered explanation is unworthy of credence."  Id. See, Villiarimo v. Aloha
27 Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002) (citing Chuang, 225 F.3d at 1123). In
28 the context of summary judgment, Title VII does not require the plaintiff who relies on

- 11 -

1  circumstantial evidence "to produce more, or better, evidence than a plaintiff who relies on
2  direct evidence." Cornwell, 439 F.3d at 1030 (citing Desert Palace, Inc. v. Costa, 539 U.S.
3  90, 100 (2003)).  This same burden-shifting analysis which applies to Title VII applies to
4  discrimination claims under § 1981 as well.  See Maduka v. Sunrise Hosp., 375 F.3d 909,
5  912 (9th Cir. 2004).  The parties agree that this same analysis applies to Plaintiff's race and
6  national origin claims based on § 1981.  (Doc. 53, at page 3; Doc. 60, at pages 6-12).
7       1. Plaintiff's prima facie case.
8       In this case, Plaintiff has demonstrated through admissible evidence that he is a
9  member of a protected class, that is, Korean American, and that he suffered an adverse
10 employment action, that is, he was denied promotion to full professor.  Plaintiff has not
11 offered any evidence that similarly situated individuals outside his protected class were
12 treated more favorably.  Rather, Plaintiff has proffered evidence that he contends gives rise
13 to an inference of discrimination.  Plaintiff further has proffered evidence that he was
14 qualified for the position of full professor.  Plaintiff's evidence includes the following facts.
15 Plaintiff has been a tenured Associate Professor at ASU since 1985.  Plaintiff's work and
16 credentials indicated his qualifications for full professor based on the opinions of certain
17 members of the reviewing committee (Associate Professors Cameron, Yabes and Cook), the
18 opinions of the four external reviewers who stated that Plaintiff should have been promoted
19 to full professor, and the recommendations of Professor Dandekar and Dean McCoy during
20 the re-review process.  As for the evidence that Plaintiff contends gives rise to an inference
21 of discrimination, Plaintiff points to the opinions of Associate Professors Cameron and Yabes
22 that members of the School Personnel Committee both on review and re-review were biased
23 against him, that Professor Mushkatel campaigned against him both on review and re-review,
24 and that Professor Mushkatel's activity was biased against him on account of his race and
25 national origin as evidenced by alleged race-biased comments attributed to Mushkatel by
26 others regarding another professor and a Korean student. Plaintiff also cites the deposition
27 testimony of Defendant John Meunier as critical of Plaintiff's 1997 book on urban planning
28 when Meunier allegedly knew nothing about urban planning.  The Court concludes that,

viewing the facts in the light most favorable to the Plaintiff, Plaintiff has made out a prima facie case of discrimination based on race and national origin.

2.   <u>Defendants' legitimate nondiscriminatory reason for the employment action.</u>

Defendants contend that they have shown a legitimate, nondiscriminatory reason for the denial of full professorship to Plaintiff. Defendants' facts show that on both the review and the re-review, the final decision was made to deny Plaintiff's application. Defendants emphasize that the decision to deny the application in both instances proceeded through six levels of review. Defendants focus on the decision on re-review by the ten-member University Promotion and Tenure Committee who voted nine to zero against Plaintiff's application, with one abstention. The reason for the adverse vote of the University Promotion and Tenure Committee was stated as "the committee observed that the candidate's having spent 10 years in the President's Office contributed substantially to his inability to meet the department guidelines for promotion, especially in the area of research." (Doc. 54, Exhibit 5 at page 4). President Crow described the University Promotion and Tenure Committee as "all senior faculty members ... [who] have their own experience to bring to bear, so we ask them to be a quality control committee."

Dr. Crow participated only in Plaintiff's re-review process because he had not become President when the original application was considered. Dr. Crow testified that re-review is a common practice. (Doc. 54, Crow Deposition at page 26). As part of the re-review process, Dr. Crow met with the Provost of the University and the Vice Provost for Academic Affairs, and reviewed Plaintiff's entire package of materials. Dr. Crow testified that he made his own analysis of the situation and decided that Plaintiff was not ready to be advanced for promotion because there was insufficient evidence of "professor behavior, which is national stature." (<u>id</u>., at pages 18-21, 52). Based on these facts and explanation, the Defendants have articulated a legitimate, nondiscriminatory reason for denying Plaintiff's application for full professor.

3.   <u>Pretext</u>.

- 13 -

The issue is whether at this stage on summary judgment proceedings Plaintiff has demonstrated the existence of evidence to create a genuine issue of material fact as to whether the reasons proffered by the Defendants for denying his application were a pretext for discrimination. Plaintiff points to the opinions of Associate Professors Cameron and Yabes that members of the School Personnel Committees in both 2000 and 2002 were biased against him and that Professor Mushkatel's actions and comments indicate racial bias. Plaintiff emphasizes repeatedly throughout his papers that discrimination by one member of a reviewing panel or at any stage of the academic hiring or promotion process may infect the ultimate employment decision. Plaintiff contends that Defendants Mushkatel and Meunier and Professors Steiner and Pijawka were known to be biased against him and that all four participated in the decision-making process. However, the record evidence indicates that Defendant Mushkatel, who was a member of the College Personnel Committee in 2002, actually voted in favor of Plaintiff's application on re-review. Dr. Steiner did not participate in the 2002 re-review and Professor Pijawka changed his negative vote in 2000 to a positive vote in 2002. Defendant Meunier participated only in the 2000 review. Moreover, Professor Meunier testified as to his concerns with Plaintiff's scholarship regarding the 1997 book Plaintiff had co-authored.

Plaintiff also claims as evidence of pretext irregularities in the selection process, including the participation of three full professors in the 2000 review even though they had been on sabbatical or administrative leave and the re-review procedures implemented by President Crow. The participation of the three full professors during the 2000 review was cited by the CAFT who recommended a new hearing with participation by a neutral faculty member. Following the filing of Plaintiff's grievance after the 2000 review, President Coor accepted the CAFT's decision and recommendation to set up a re-review. The Provost set up the re-review and the School developed the review criteria. On re-review, the same six levels considered Plaintiff's application and new reports were written by each level. Various members of the six levels had changed on the re-review. The ten-member University Promotion and Tenure Committee voted nine to zero, with one abstention, against Plaintiff's

1 application, citing the ten years Plaintiff had spent in the President's Office as contributing
2 to Plaintiff's inability to meet department guidelines for promotion, especially in the area of
3 research. This ten-member Committee was comprised of "senior faculty members." While
4 certain irregularities in the decision-making process may raise questions as to reliability of
5 the tenure decision, Bickerstaff v. Vassar College, 196 F.3d 435, 453-54 (2d Cir. 1999), the
6 procedural "irregularities" Plaintiff cites do not give rise to an inference that a discriminatory
7 animus flavored the decision. Weinstock v. Columbia Univ., 224 F.3d 33, 45 (2d Cir.
8 2000)(rejecting contention that series of procedural irregularities in tenure process showed
9 discriminatory intent because there was no evidence that plaintiff's sex played a role in the
10 alleged irregularities).

11 In this case, participants in the selection process had varying degrees of opinions
12 regarding Plaintiff's application. As part of the re-review process, Dr. Crow met with the
13 Provost of the University and the Vice Provost for Academic Affairs, and reviewed Plaintiff's
14 entire package of materials. Dr. Crow testified that he made his own analysis of the situation
15 and decided that Plaintiff was not ready to be advanced for promotion because there was
16 insufficient evidence of "professor behavior, which is national stature." The Ninth Circuit
17 has observed that, "academic tenure decisions involve subjective judgments on scholarship
18 that neither courts nor juries are well qualified to make." Elsayed Mukhtar v. California
19 State University, 299 F.3d 1053, 1067 (9th Cir. 2002)(citing Lynn v. Regents of Univ. of Cal.,
20 656 F.3d 1337, 1342-44 (9th Cir. 1981)).

21 Plaintiff has not demonstrated the existence of evidence to create a genuine issue of
22 material fact as to whether the reasons proffered by Defendants for denying his application
23 were a pretext for discrimination. Plaintiff also has not shown that the undisputed facts
24 establish that the promotion process was tainted by irregularities and illegal discriminatory
25 animus. Defendants' motion for summary judgment as to Plaintiff's discrimination claims
26 based on race and national under Title VII and § 1981 is granted. Plaintiff's motion for
27 summary judgment as to these claims is denied.
28     (B)   Plaintiff's Retaliation Claim.

1   A plaintiff may establish a prima facie case of retaliation by showing that he or she
2   engaged in a protected activity, suffered an adverse employment decision, and that there was
3   a causal link between the protected activity and the adverse employment decision.
4   Villiarimo, 281 F.3d at 1064 (citing Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir.
5   1987)); Chaboya v. Am. Nat'l Red Cross, 72 F. Supp. 2d 1081, 1093 (D. Ariz. 1999).
6   Plaintiff contends that he suffered an adverse employment action after he filed a grievance
7   concerning the 2000 review and objected specifically to "racial parochialism" following the
8   re-review recommendation of the CAFT. The Court concludes that the re-review process
9   which consisted of six levels of review, the unanimous vote of the University Promotion and
10  Tenure Committee, and the final determination to deny Plaintiff's application made by
11  President Crow who was not involved in the initial review process breaks any alleged causal
12  link.  Defendants' motion for summary judgment as to Plaintiff's claim based on retaliation
13  is granted.  Plaintiff's motion for summary judgment is denied.

14   (C) Plaintiff's § 1983 Claims Against Defendants Crow, Mushkatel and Meunier.

15  Plaintiff in Count V claims a violation of his right to due process under the Fifth and
16  Fourteenth Amendments to the U.S. Constitution.  The individual Defendants have moved
17  for summary judgment as to Count V on the ground that Plaintiff had no property and/or
18  liberty interest in a promotion to full professor.  In this case, a six level review process is
19  utilized by ASU regarding consideration of an application to full professor.  Where
20  professors have no expectation of tenure and therefore no liberty or property due process
21  status, failure to follow procedure does not amount to a violation of due process rights. Batra
22  v. Board of Regents of the Univ. of Nebraska, 79 F.3d 717, 720 (8th Cir. 1996).

23  In his response to Defendants' motion for summary judgment and in his cross motion
24  for summary judgment, Plaintiff contends that his application was entitled to review by an
25  unbiased decision-maker.  In his motion for summary judgment, Plaintiff contends that he
26  has a right to a fair and impartial review process and evaluation of his application for
27  promotion to full professor.  Plaintiff cites Gutzwiller v. Fenik, 860 F.2d 1317 (6th Cir.
28  1988), in support of his argument.  In Gutzwiller, the plaintiff sued the University of

Cincinnati and a number of individuals claiming that the defendants' decision to deny tenure was the result of discrimination. The plaintiff in <u>Gutzwiller</u> asserted claims based on Title VII and § 1983. In considering the plaintiff's substantive due process claim based on § 1983, the Sixth Circuit stated as follows:

> [T]he Supreme Court consistently has assumed that federal courts may review academic decisions of public educational institutions under a substantive due process standard. <u>See</u>, <u>e.g.</u>, <u>Ewing</u>, 106 S.Ct. at 512. However, the Court has also made clear that absent evidence of a constitutionally impermissible basis for a challenged academic decision -- such as sex or race discrimination -- courts and juries must be extremely reluctant to second guess the professional judgment of the academic decisionmakers. <u>Id.</u>, at 513. Only when the challenged decision is arbitrary and capricious, and without rational basis, may it be set aside upon judicial review. <u>Id.</u>; <u>see</u> <u>also</u> <u>Stevens v. Hunt</u>, 646 F.2d 1168, 1170 (6th Cir. 1981).

<u>Gutzwiller</u>, 860 F.2d at 1331.

Plaintiff also cites <u>Walker v. City of Berkeley</u>, 951 F.2d 182 (9th Cir. 1991), in support of his argument regarding an impartial decisionmaker. However, in <u>Walker</u>, the due process claim depended on whether the plaintiff had a property right in continued employment, which is not at issue here. <u>Id.</u>, at 183-84.

In this case, Defendant Meunier only participated in the 2000 review process. Defendant Mushkatel participated in the 2000 review and in the 2002 re-review. On re-review in 2002, Defendant Mushkatel voted along with the two other members of the College Personnel Committee to support the promotion. The deliberations of the College Personnel Committee were conducted with an outside observer, Professor Dan Landers. Defendant Crow as President of the University made the final decision to deny Plaintiff's application. Dr. Crow read only the 2002 materials, stating that it was the first time he had encountered the case. (Doc. 59, Crow Deposition at pages 105, 108, 110). The decision to conduct the re-review was made by President Crow's predecessor, President Coor. As part of the package President Crow reviewed, the University Promotion and Tenure Committee made up of ten senior faculty members voted nine to zero, with one abstention, against Plaintiff's application. President Crow met with the Provost of the University and the Vice

1  Provost for Academic Affairs before making his decision. Under these circumstances,
2  Plaintiff has not shown a denial of substantive due process so as to support a claim for
3  deprivation of constitutional rights under § 1983 against Defendants Meunier, Mushkatel or
4  Crow. Defendants' motion for summary judgment on Plaintiff's Count V is granted.
5  Plaintiff's cross motion for summary judgment is denied.

6  **Accordingly**,

7  **IT IS ORDERED** that Defendants' motion for summary judgment as to all of
8  Plaintiff's claims (Counts I through V) (Doc. 53) is granted.

9  **IT IS FURTHER ORDERED** that Plaintiff's cross motion for summary judgment
10  as to liability (Doc. 55) is denied.

11  **IT IS FURTHER ORDERED** that the Clerk shall enter Judgment in favor of
12  Defendants as to all of Plaintiff's claims.

13  DATED this 28th day of September, 2006.

_____
Mary H. Murguia
United States District Judge