UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Professor Joochul Kim, | No. CV 04-1931 PHX MHM |
| Plaintiff, | **PROPOSED FINAL PRETRIAL ORDER FOR JURY TRIAL** |
| v. | |
| Arizona Board of Regents, etal., | |
| Defendants. | |

The following is the joint Proposed Final Pretrial Order to be considered at the Final Pretrial Conference set for April 6, 2009.

**A.    TRIAL COUNSEL FOR PARTIES**
Attorneys for Plaintiff

William R. Hobson, SBN 006887
**LAW OFFICES OF
    WILLIAM R. HOBSON, P.C.**
7303 W. Boston Street
Chandler, AZ  85226
480-705-7550
480-7057503 fax
bill@billhobsonlaw.com

Matthew Kim, SBN 022528
**THE KIM LAW FIRM, L.L.C.**
7303 West Boston Street
Chandler, AZ 895226
(480) 705-7550
(480) 705-7503 Fax
mhk@kimlawfirm.com

Kevin Koelbel, SBN 016599
**LAW OFFICES OF
    KEVIN KOELBEL, PC**
7303 West Boston Street
Chandler, AZ 895226
(480) 705-7550
(480) 705-7503 Fax
kevin@koelbellaw.com

Attorney for Defendant

Michael K. Goodwin, SBN 014446
Assistant Attorney General
1275 W. Washington
Phoenix, AZ  85007-2926
(602) 542-7674
(602) 542-7644
Michael.Goodwin@azag.gov

**B.      STATEMENT OF JURISDICTION**

1.      The Court has jurisdiction over the subject matter of the Complaint pursuant to 28 U.S.C. § 1331 because the action arises under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§2000e, *et seq.),* 1981 and 1983 against individual defendants as set forth in Counts IV and V of Dr. Kim's first amended complaint..

2.      Jurisdiction over Plaintiff's Title VII claim is not disputed.  Defendant disputes that the court has jurisdiction over any claims based on §§ 1981 or 1983 on the grounds that (a) those claims were extinguished by the appeal, and (b) those claims are barred by the Eleventh Amendment.

**C.      STIPULATIONS AND UNCONTESTED FACTS AND LAW**

1.      The following material facts are admitted by the parties and require no proof:

        a.      The University denied Kim's application for promotion on April 30, 2003.

        b.      Prior to the denial of Kim's application, Kim and the University had agreed that if Kim received a favorable decision, the promotion would be retroactive to 2001.

        c.      In 2001, Kim's salary was $51,216.

        d.      Kim filed an EEOC Charge alleging discrimination on December 17, 2003.

2.      The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:

        a.      Dr. Kim is a tenured faculty member in the School of Planning and

Landscape Architecture and Design ("SPLA") at Arizona State University.

        b.     He started working at ASU in 1980 as an assistant professor.

        c.     In 1985, he was promoted to associate professor.

        d.     From 1990 to 2000, he worked in the office of ASU President Lattie Coor.

        e.     Dr. Kim applied for promotion to full professor at ASU in 2000.

        f.     The process for review of an application for full professor has six levels of review: 1) a committee from the applicant's school, 2) the dean of the school, 3) a committee from the applicant's college, 4) the dean of the college, 5) a committee from the university, and 6) the provost or president.  The first five levels are advisory.  The President or Provost is the decisionmaker.

        g.     Dr. Kim's application was reviewed and denied.

        h.     He filed a grievance through ASU's grievance procedure, claiming that the review violated ASU's procedures

        i.     The Committee on Academic Freedom and Tenure ("CAFT") conducted a hearing and found that procedures had been violated and recommended a new-review.

        j.     President Coor adopted the CAFT recommendations, which included:

    1) The SPLA should ensure that its bylaws and personnel procedures in general, are within full compliance of CAED, University, and ABOR policy,

    2) The Dean of CAED, and the Director of SPLA, should work to ensure that there is a culture with the School that adheres to the spirit and intent of ACD 204-01: Faculty Code of Ethics, and

    3) Pursuant to the implementation of #1 and #2, Dr. Kim should be given a new, fair hearing.  He should be given the option to have his existing case (from fall 2000) heard, and if approved, have a retroactive appointment.  He should be given the option of having a neutral ASU faculty member observe committee deliberations (but otherwise not participate) and report to the Dean and Provost on the fairness and appropriateness of those deliberations per ABOR, ASU, CAED, and SPLA policies and procedures.

        k.     Dr. Kim opted to have his case reheard and he requested to have a neutral faculty member to observe personnel committee deliberations concerning his

application.

l.     Dr. Kim submitted application for re-review subject to the following requirements imposed by Provost Glick:

a) [Dr. Kim needed] to resubmit the same materials as [he] submitted in the fall semester 2001 to his School Personnel Committee at the normal date of submission in fall 2002.

b) The same external letters of reference as were secured in fall 2001 [would] be a part of the materials considered in the re-review.

c) The Personnel Committees and the administrators who [would] consider the materials will those in place in the fall 2002.

d) The criteria and procedures that [would] be used at all levels of the re-review [would] be those of the newly clarified and explicit by-laws of the School of Planning and Landscape Architecture, as well as those of the college and university.  [The Provost's]understanding [was] that the school and college [was] working to clarify and make explicit existing expectations and criteria.

e) [Provist Glick would] appoint a neutral ASU faculty member from outside the discipline of architecture to observe committee deliberations at the department and college levels (but not otherwise participate) and report to the dean and provost on the fairness and appropriateness of those deliberations per ABOR, ASU, CAED, and SPLA policies and procedures.

f) The chair of the School Personnel Committee [would] be specifically charged to ensure that the spirit and intent of ACD 204-01 Faculty Code of Ethics be sustained throughout the deliberations of the committee.

g) The process and timetable of reviews and recommendations [would] otherwise be identical to that of all other reviews conducted in the 2002 academic year. [. . .].

h) If you are rewarded promotion it will be retroactive to August 15, 2001.

m.     Alvin Mushkatel showed a letter written by Dr. Kim regarding transfer to another unit to David Pijawka and Hemalata Dandekar.

n.     By mutual agreement, Daniel Landers was selected as the neutral observer to observe the personnel committee deliberations.

o.     By a 4-3 vote, the SPLA personnel committee recommended in favor of Kim's promotion.

p.     The SPLA Director recommended in favor of Kim's promotion.

q.     By  3-0 vote, the CAED personnel committee recommended in favor

of Kim's promotion.

r.     The Interim Dean of the CAED recommended in favor of Kim's promotion.

s.     By a 9-0 vote, the University Promotion & Tenure Committee recommended against Kim's promotion.

t.     President Crow denied the promotion.

u.     The EEOC issued a Dismissal and notice of right to sue on June 22, 2004.

v.     Kim filed this action on September 15, 2004.

**3.**     The following issues of law are uncontested and stipulated by the parties:

a.     Dr. Kim had no contractual right to promotion.

**D.     CONTESTED ISSUES OF FACT AND LAW**

**1.**     The following are material issues of fact to be tried and decided:

a.     Did the University or any of its agents discriminate based on race or national origin against Kim in the promotion review process?

*Plaintiff contends:*

The University did discriminate against Kim when it permitted persons who had specific discriminatory animus to Kim to participate in the review process. Participants in the process observed anti-Asian bias and admitted being influenced by it. President Crow acknowledged that his decision was informed by the underlying review process. He insisted that his review was independent but claimed that while Kim had an international reputation as a scholar, his national reputation was deficient. This claim disregarded the university's policy that Kim met standards if he was either nationally or internationally recognized. More importantly, the letters of outside reviewer who were scholars in Kim's field of study and who were chosen by ASU reflected that he was a recognized scholar in his field.

*Defendant contends:*

The University denied Kim's application because his record did not merit promotion. President Crow made the decision based on his academic judgment. No one involved in the review process was biased against Kim because of Asian ethnicity.

       b.    Did Alvin Mushkatel act under color of state law and in violation of Dr. Kim's constitutional rights to equal protection of the law?

*Plaintiff Contends*:

Alvin Mushkatel was acting under color of law when he discriminated against Kim and misrepresented the record and obligations of Kim in the re-review process. He neglected to acknowledge that it was his conduct that led to the recommended re-review.

He also suggested that the application did not include materials that had been developed since the original review and failed to acknowledge that the re-review limited Kim from including any further materials. In doing so, he misrepresented the record of Kim and failed to disclose his own misconduct.

He also included reference to an alleged breach of confidentiality by Kim which had already been determined not to have occurred.

Alvin Mushkatel was dishonest in his evaluation and report concerning Kim and his dishonesty masked the real reasons which were discriminatory ones.

*Defendant Contends*:

Mushkatel was elected as the SPLA representative to the College personnel committee. He had no desire to take part in Kim's re-review but agreed to do so at the urging of University administrators. Mushkatel joined in the committee's unanimous recommendation in favor of Kim's promotion.

       c.    Did the University subject Dr. Kim to disparate treatment based on his Asian ethnicity in the review of his application for promotion?

*Plaintiff Contends*:

Kim's application for promotion to Full Professor was treated differently than that of other employees when people who were not permitted to be part of the process for review of promotion to full professor applications came back from leave and inserted themselves in such a way as to negatively affect the application for Kim. When the responsible university committee found in Kim's favor and suggested a re-review, one of those persons who had caused the original problem, re-inserted himself into the process and, over Kim's objections, developed a report of a committee suggesting wrongdoing and irregularities that were untrue or attributable to him. The university professor, who should have observed this irregularity, did not attend that meeting and gave short shrift to critically reviewing what was being written.

*Defendant Contends*:

Kim was treated the same as others who have been given re-reviews.

d.     Was the re-review of Kim's application for promotion to full professor tainted by anti-Asian or anti-Korean bias in violation of Kim's equal protection rights?

*Plaintiff Contends*:

President Crow relied on a process in which individual participants either refused to continue because of the irregularities and misconduct of Alvin Mushkatel or participated but reported later that Alvin Mushkatel had engaged in discriminatory conduct. Dr. Crow's report of the reason he chose not to award promotion, that Dr. Kim did not have national stature, is belied by the very process he said he followed. Dr. Kim was recognized in the various reports as having national and international stature as a scholar in his field.

*Defendant Contends*:

There were no irregularities or misconduct in the re-review. Some people supported Kim's promotion and some opposed it. The University Promotion and Tenure

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Committee recommended against the promotion by a 9-0 vote.  President Crow determined that Kim had not shown sufficient evidence of achievement to merit promotion.

   **2.**      The following are material issues of law to be tried and decided:

      a.      Does discriminatory motivation and conduct at any step of the review or re-review process of Dr. Kim's application for promotion to full professor, taint the process and deny him equal protection of the law?

   *Plaintiff Contends*:

   Discriminatory motivation and conduct at any step of the review or re-review process of Dr. Kim's application for promotion to Full Professor, taints the process and denies Dr. Kim equal protection of the law.

   *Defendant Contends*:

   There was no discrimination in Kim's promotion process.  Moreover, assuming Plaintiff has an equal protection claim, he must prove purposeful discrimination based on race, and but-for causation must also be shown.  President Crow's decision was based on his assessment of Kim's record—a nondiscriminatory reason.

      b.      Was the conduct of Alvin Mushkatel in his evaluation of Kim's application for promotion to full professor or in his participation in the re-review process (including the manner of his participation) motivated by impermissible discriminatory animus?

   *Plaintiff Contends*:

   The conduct and motivation of Alvin Mushkatel in his evaluation of Kim's application for promotion to Full Professor and then in his participation in the re-review process (including the manner of his participation) was motivated by impermissible discriminatory animus in violation of Kim's equal protection rights?

1

2
*Defendant Contends*:

3
Mushkatel was not motivated by bias.  He joined in the CAED's recommendation in favor of Kim's promotion.

4
      c.     If the evaluation of the application of Dr. Kim to promotion to full

5
professor is shown to be slanted or misleading and the reason or reasons given for the

6
denial or Dr. Kim's promotion to full professor can be shown to be misleading or false,

7
can the jury infer that the real reason was discriminatory and in violation of Dr. Kim's

8
rights to equal protection under the law?

9
*Plaintiff Contends*:

10
If the jury determines that the reasons offered by Defendants were misleading or

11
false, they may infer the false or misleading reasons were for purposes of masking the real

12
reason or reasons which were impermissible discriminatory ones in violation of Dr. Kim's

13
rights to equal protection under the law.

14
*Defendant Contends*:

15
Plaintiff has the burden of proving intentional discrimination.  In order to find that

16
Kim was denied promotion for a discriminatory reason, the jury must find that President

17
Crow harbored a discriminatory intent against Kim because of his Asian ethnicity.

18
      d.     Does Kim still have viable claims under 42 U.S.C. §§ 1981 and

19
1983?

20
*Plaintiff contends*:

21
*See* Separately filed Bench Memorandum Re: Viable Claims

22
*Defendant contends*:

23
Kim's claims under §§ 1981 and 1983 were extinguished by the appeal.  The only

24
claim still viable is the Title VII claim.

25
      e.     Are any of Kim's claims barred by the statute of limitations?

26

27

28

*Plaintiff contends*:

Dr. Kim' claims are timely.  The 2001 review informs the discriminatory animus of Alvin Mushkatel, which tainted the 2003 process and is a part of a continuing pattern of discrimination.  Kim is not challenging the 2001 decision.

*Defendant contends*:

To the extent Kim challenges the 2003 decision to not promote him, his Title VII claim is *not* barred by the statute of limitations.  However, to the extent Kim seeks to challenge the 2001 decision not to promote him, his claim is untimely.  That decision was communicated to him on April 27, 2001.  In order to bring a lawsuit challenging that decision under Title VII, Kim was required to file an administrative charge of discrimination with the EEOC within 300 days, and he did not do so.  Even if Kim still had claims under §§ 1981 and 1983, any attempt to challenge the 2001 decision under those statutes is barred by the two-year statute of limitations applicable to those claims.

   f.  Are any of Kim's claims barred by the Eleventh Amendment?

*Plaintiff contends*:

Kim is not pursuing a § 1981 or § 1983 claim against the state.  Eleventh Amendment immunity does not apply to § 1983 claims against individuals in their individual capacity.  *Hafer v. Melo,* 502 U.S. 21, 30 (1991)("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal laibility' on state official under § 1983)(citing *Schuer v. Rhodes,* 416 U.S. 232, 238 (1974)); (*Hydrick v. Hunter,* 500 F.3d 978, 987 (9th Cir. 2007)("[T] the Eleventh Amendment does not bar the Plaintiffs' claim for damages against the Defendants in so far as they are being sued in their individual capacities."); *Porter v. Jones,* 319 F.3d 483, 491 (9th Cir. 2003).

*Defendant contends*:

If Kim's claims under §§ 1981 and 1983 were not extinguished, the § 1981 claim is barred by the Eleventh Amendment and the § 1983 claim is similarly barred to the extent Kim seeks to sue Crow, Meunier, and Mushkatel in their individual capacities.

g.      If Plaintiff prevails, what relief is available?

*Plaintiff contends*:

The available relief includes equitable relief (back pay and promotion), compensatory damages, attorney's fees and costs..

*Defendant contends*:

If the jury returns a verdict in Plaintiff's favor, Dr. Kim is eligible for an award of compensatory damages (subject to the Title VII statutory cap), promotion to full professor, and back pay to August 2001.  Any award of back pay would be measured by the difference between his salary as an associate professor and what his salary would have been as a full professor.  As a prevailing party, Kim would also be eligible to recover his attorney's fees and costs, although that is an issue to be addressed after the trial.

h.      If Plaintiff prevails, does the court or the jury decide whether Kim is entitled to non-legal relief?

*Plaintiff contends*:

Back pay and promotion are equitable relief for the court to decide, but the Plaintiff requests that jury be provided interrogatories for these issues to serve as an advisory verdict.

*Defendant contends*:

An award of promotion and/or back pay is equitable in nature.  As such, these are matters for the Court to decide in a Title VII action.

i.      If Defendant(s) prevail, what relief is available?

*Plaintiff contends*:

None.  It is well established that an award of fees to a prevailing defendant under § 2000e-5(k) is appropriate only upon a finding that the action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir.1993) (*quoting Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, (1978)).

In *Christianburg,* the Supreme Court clarified the standards for the award of fees to prevailing parties in Title VII actions, distinguishing between an award of fees to plaintiffs and defendants.  There are at least two "strong equitable considerations" in awarding fees to plaintiffs that are "wholly absent in the case of a prevailing Title VII defendant."  *Id.* at 418.  First, the plaintiff is the "chosen instrument of Congress" for vindication of congressional policy and second, in such a case, fees are awarded "against a violator of federal law."  *Id.* at 418.  The provision was designed to "make it easier for a plaintiff of limited means to bring a meritorious suit."  *Id.* at 420 (citing Remarks of Senator Humphrey, 110 Cong.Rec. 12724 (1964)).  Moreover, because § 706(k) of the act, codified at 42 U.S.C. 2000e-5(k), "allows fee awards only to prevailing private plaintiffs [this] should assure that this statutory provision will not in itself operate as an incentive to the bringing of claims that have little chance of success." *Id.* at 422.  That section was not designed as a general penalty provision for unsuccessful plaintiffs attempting to enforce Title VII.  Rather, as the chosen instruments of Congress, plaintiffs are encouraged to pursue meritorious claims knowing that, if successful, attorney's fees will be awarded.  Only in exceptional cases did Congress intend that defendants be awarded attorney's fees under Title VII.  An award of fees to Defendants, if they prevail, will not serve "the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII," *Christianburg*, 434 U.S. at 422.

A defendant stands in a different equitable position from that of a prevailing plaintiff.  Congress intended to protect defendants from "litigation having no legal or factual basis."  *Id.* at 420.  However, successful defendants in civil rights cases are allowed to recover attorneys fees only upon a finding that plaintiff's action was frivolous, unreasonable or without foundation.  *Id.* at  422; *Patton v. County of Kings*, 857 F.2d 1379, 1381 (9th Cir.1988) (prevailing section 1983 civil rights defendant is entitled to attorneys fees only where action brought is found to be unreasonable, frivolous, meritless or vexatious).

Here, the Ninth Circuit found "a genuine issue of material fact regarding whether the University discriminated against Kim on the basis of his Asian ethnicity in denying Kim's application for promotion to full professor." *Kim v. Ariz. Board of Regents*, 293 Fed. Appx. 477, 2008 WL 4279949 (9th Cir. 2008). That conclusion should preclude a finding that Dr. Kim's claims had no foundation in law or fact at the outset.

The *Christianburg* Court cautioned that district court must resist the "understandable temptation to engage in *post hoc* reasoning" once a plaintiff has unsuccessfully pursued a claim. *Id.* at 421-22. There is a significant difference between the bringing of cases with no foundation in law or facts at the outset and ultimately being unable to convince the tribunal of the merits of a briskly contested claim for relief. *Mitchell v. Office of Los Angeles County Superintendent of Schools*, 805 F.2d 844, 846-48 (9th Cir. 1986).

*Defendant contends*:

If the jury returns a defense verdict, Defendants would be eligible to recover their attorney's fees and costs, although that is an issue to be addressed after the trial.

j.     Was Kim's race or national origin a substantial or motivating factor in the 2003 decision not to promote him.

*Plaintiff contends*:

President Crow based his decision on the material that were provided to him, which included misinformation and reports that were provided or influenced by Alvin Mushkatel who was motivated by discriminatory animus.

*Defendant contends*:

Neither race nor national origin was a substantial or motivating factor. The opposition to Kim's promotion as well as the decision was based on an assessment of Kim's record.

k.     May Defendant(s) be held liable if the decisionmaker, President Crow, made an independent and unbiased decision to not promote Kim?

*Plaintiff contends:*

Yes.  It is the law of the case.  *See Kim v. Ariz. Board of Regents*, 293 Fed. Appx. 477, 2008 WL 4279949 (9th Cir. 2008)(embracing *Lam v. University of Hawaii,* 40 F.3d 1551, 1560 (9th Cir. 1994).  Further, that is not the evidence in this case.  President Crow testified that he relied on the materials that were provided to him through the re-review process.

*Defendant contends:*

No, because there is no unlawful motive if the decisionmaker's decision was independent and unbiased.

l.      If the jury finds that race or national origin was a motivating factor in President Crow's decision to not promote Kim, may Defendant(s) avoid liability if it is shown that President Crow would have made the same decision for a lawful reason?

*Plaintiff contends:*

The same decision defense was waived.  Same decision is an affirmative defense that must be pled.  Fed. R.  Civ. P.  8 (1) ("a party must affirmatively state any avoidance or affirmative defense"); *Metoyer v Chassman,* 504 F.3d 919, 931 (9th Cir. 2007). Defendants did not plead this affirmative defense.  Failure to plead an affirmative defense is a waiver of that defense.  *Enlow v. Salem-Keizer Yellow Cab Co., Inc.,* 389 F.3d 802, 819 (9th Cri. 2004).  Defendants have not made any disclosure of evidence or a witness who will testify to this defense.  The expected testimony of every witness who has been disclosed is limited to "their involvement with Plaintiff's promotion process and grievance procedures.  The subject matter of their testimony is more fully described in the documents tendered to Plaintiff in conjunction with this disclosure."  The documents attached were Plaintiff's Personnel File from Office of the Provost.  None of them bear on the same-decision affirmative defense.  The Defendants' failure to plead or disclose this affirmative defense deprived Plaintiff of any opportunity to conduct discovery on this affirmative defense.

*Defendant contends:*

If a jury finds that race or national origin was a motivating factor but that President Crow would have made the same decision to deny the promotion, Plaintiff would be entitled to judgment under Title VII but his relief would be limited; Defendants would be entitled to judgment under § 1983, if Kim has such a claim.

m.   Is Mushkatel entitled to qualified immunity, assuming Kim has a § 1983 claim against them individually?

*Plaintiff contends:*

No. Eleventh Amendment immunity does not apply to § 1983 claims against individuals in their individual capacity. *Hafer v. Melo,* 502 U.S. 21, 30 (1991)("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal laibility' on state official under § 1983)(citing *Schuer v. Rhodes,* 416 U.S. 232, 238 (1974)); (*Hydrick v. Hunter,* 500 F.3d 978, 987 (9th Cir. 2007)("[T] the Eleventh Amendment does not bar the Plaintiffs' claim for damages against the Defendants in so far as they are being sued in their individual capacities."); *Porter v. Jones,* 319 F.3d 483, 491 (9th Cir. 2003).

*Defendant contends:*

Mushkatel is entitled to qualified immunity because the evidence does not establish that he violated the Constitution and because his conduct was objectively legally reasonable.

**E.   LIST OF WITNESSES**

    **1.   *Plaintiff's Witnesses***

        **a.   Who Will Be Called At Trial**

           (1)   Joochul Kim

           (2)   Michael Crow

           (3)   Alvin Mushkatel

           (4)   Teresa Cameron

(5)     Edward Cook

(6)     Ruth Yabes

(7)     Hemalata Dandekar

(8)     Michael Kroelinger

(9)     David Pijawka

**b.     Who May Be Called At Trial**

(1)     Lattie Coor

(2)     Gail Hackett

(3)     John Meunier

(4)     Mary Kihl

**c.     Who Are Unlikely To Be Called At Trial**

(1)     Wellington Reiter

(2)     Ron McCoy

(3)     Milton Glick

2.     *Defendant's Witnesses*

**a.     Who Will Be Called At Trial**

(1)     Michael Crow

(2)     John Meunier

(3)     Alvin Mushkatel

(4)     Milton Glick

(5)     Gail Hackett

(6)     Daniel Landers

**b.     Who May Be Called At Trial**

(7)     Subhrajit Guhathakurta

(8)     Frederick Steiner

(9)     Barbara Mawhiney

-16-

       **c.**      **Who Are Unlikely To Be Called At Trial**

           (1)    Hemalata Dandekar

           (2)    Michael Kroelinger

           (3)    Ignacio San Martin

           (4)    Wellington Reiter

Each party understands that it is responsible for ensuring that the witnesses it wished to call to testify are subpoenaed. Each party further understands that any witness a party wishes to call must be listed on that party's list of witnesses; the party cannot rely on the witness having been listed or subpoenaed by another party.

**F.**    **LIST OF EXHIBITS**

    **1.**    *The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:*

        a.    <u>Plaintiff's Exhibits:</u>

| No. | Description |
|-----|-------------|
| 1 | ACD 506-05 |
| 2 | CAFT Committee Report |
| 3 | Coor Letter to Kim, 03/27/02 |
| 4 | Kim Letter to Kihl, 04/05/02 |
| 5 | Meunier memo to Hackett, 05/09/02 |
| 6 | Glick memo to Kim, 05/09/02 |
| 7 | SPLA Criteria for Promotion |
| 8 | Dandekar letter to Kim, 9/13/02 |
| 9 | Kim memo to Dandekar, 09/17/02 |
| 10 | Kim memo to Dandekar, 09/18/02 |
| 11 | SPLA Committee Report |
| 12 | Dandekar memo to McCoy, 10/31/02 |
| 13 | Dandekar memo to McCoy, 10/31/02 |

14      CAED Report, 11/29/02

15      Landers e-mail to Stevens, 12/03/02

16      McCoy e-mail to Glick, 01/06/03

17      UPTC Report, 03/28/03

18      Crow letter to Kim, 04/30/03

19      Request for Academic Personnel Action

20      Declaration of Teresa Cameron

21      Declaration of Ruth Yabes

22      Declaration of Edward Cook

23      Declaration of Michael Kroellinger

24      Lattie Coor Statement, 11/15/05

25      External Review Letters

26      2001 Performance Evaluation

27      ACD Policies

28      Promotion Package

29      SPLA Criteria for Promotion

30      Dandekar memo to Kihl, 10/31/2002

31      Report of the tenure committee, 03/20/01

32      Meunier recommendation, 01/08/01

33      CPAC Report, 12/12/2000

34      Kihl memo to Meunier, 11/22/2000

35      Meunier memo to Glick, 10/29/1998

36      Meunier memo to Glick, 10/13/1998

37      Steiner memo to Meunier, 10/12/1998

38      Defendant's Response to Non-Uniform Interrogatory
        No.1, Exhibit 1

b.      <u>Defendant's Exhibits:</u>

| No. | Description |
|-----|-------------|
| 101 | ACD 509-02 |
| 102 | Hackett-Kim email correspondence, 07/03.02 7 07/13/02 |
| 103 | SPLA Bylaw, 08/19/02 |
| 104 | Stevens-Mushkatel-McCoy email correspondence, 10/02/02 |
| 105 | Landers-Glick-McCoy email correspondence, 10/10/02 |
| 106 | Hackett letter to Kim, 06/09/03 |
| 107 | Bjork letter to Kim, 10/20/03 |
| 108 | Kim letter to Burstein, 10/28/03 |
| 109 | Crow/Hacket letter to CAFT, 11/04/03 |
| 110 | Administrative Review report and recommendation, 04/26/02 |
| 111 | Meunier letter to Kim, 11/09/90 |
| 112 | Meunier memo to Kim, 05/12/94 |
| 113 | Meunier memo to Kim, 10/26/98 |
| 114 | Meunier memo to Kim, 04/19/00 |
| 115 | Meunier memo to Kim, 03/23/01 |
| 116 | Reed memo to Kim, 09/16/04 |
| 117 | Burns memo to Kim, 04/16/86 |
| 118 | McSheffrey memo to Burns, 04/17/86 |
| 119 | McSheffrey memo to Fry, 04/24/86 |
| 120 | MecSheffrey memo to Burns, 05/21/86 |
| 121 | Lai memo to Meunier, 04/20/88 |
| 122 | Steiner memo to Kim, 11/02/89 |
| 123 | Steiner memo to Kim, 03/27/90 |
| 124 | Steiner memo to Muenier re Evaluation of Kim, 04/20/90 |
| 125 | Steiner-Gooding email correspondence, 04/27/91 |

126     Steiner memo to Meunier, 04/29/91

127     PUP 622 Students memo to Steiner, 04/15/93

128     Steiner memo to Meunier, 05/24/93

129     Kim letter to Cayer, 05/03/94

130     Steiner memo to Glick, 01/31/96

131     Meunier memo to Glick, 02/11/98

132     EEOC Charge

133     EEOC Dismissal and right-to-sue

**2.**     ***As to the following exhibits, the parties have reached the following stipulations:***

a.     Plaintiff's Exhibits:

.

| No. | Description | Stipulation |
| --- | --- | --- |
| 1. | ACD 506-05 | Admissible |
| 2. | CAFT Committee Report | Admissible |
| 3. | Coor Letter to Kim, 03/27/02 | Admissible |
| 4. | Kim Letter to Kihl, 04/05/02 | Admissible |
| 5. | Meunier memo to Hackett, 05/09/02 | Admissible |
| 6. | Glick memo to Kim, 05/09/02 | Admissible |
| 7. | SPLA Criteria for Promotion | Admissible |
| 8. | Dandekar letter to Kim, 9/13/02 | Admissible |
| 9. | Kim memo to Dandekar, 09/17/02 | Admissible |
| 10. | Kim memo to Dandekar, 09/18/02 | Admissible |
| 11. | SPLA Committee Report | Admissible |
| 12. | Dandekar memo to McCoy, 10/31/02 | Admissible |
| 13. | Dandekar memo to McCoy, 10/31/02 | Admissible |
| 14. | CAED Report, 11/29/02 | Admissible |

| 15. | Landers e-mail to Stevens, 12/03/02 | Admissible |
|---|---|---|
| 16. | McCoy e-mail to Glick, 01/06/03 | Admissible |
| 17. | UPTC Report, 03/28/03 | Admissible |
| 18. | Crow letter to Kim, 04/30/03 | Admissible |
| 19. | Request for Academic Personnel Action | Admissible |
|  |  |  |
| 25. | External Review Letters | Admissible |
| 26. | 2001 Performance Evaluation | Admissible |
| 27. | ACD 506-07 | Admissible |
| 28. | Promotion Package | Admissible |
| 29. | SPLA Criteria for Promotion | Admissible |
| 30. | Dandekar memo to Kihl, 10/31/2002 | Admissible |
|  |  |  |
| 35. | Meunier memo to Glick, 10/29/1998 | Admissible |
| 36. | Meunier memo to Glick, 10/13/1998 | Admissible |
| 37. | Steiner memo to Meunier, 10/12/1998 | Admissible |

b.      Defendant's Exhibits:

| No. | Description | Stipulation |
|---|---|---|
| 103 | SPLA Bylaw, 08/19/02 | Admissible |
| 104 | Stevens-Mushkatel-McCoy email correspondence, 10/02/02 | Admissible |
|  |  |  |
| 106 | Hackett letter to Kim, 06/09/03 | Admissible |
| 107 | Bjork letter to Kim, 10/20/03 | Admissible |
| 108 | Kim letter to Burstein, 10/28/03 | Admissible |
| 109 | Crow/Hacket letter to CAFT, 11/04/03 | Admissible |

| 110 | Administrative Review report and recommendation, 04/26/02 | Admissible |
|---|---|---|
| 111 | Meunier letter to Kim, 11/09/90 | Admissible |
| 112 | Meunier memo to Kim, 05/12/94 | Admissible |
| 113 | Meunier memo to Kim, 10/26/98 | Admissible |
| 114 | Meunier memo to Kim, 04/19/00 | Admissible |
| 115 | Meunier memo to Kim, 03/23/01 | Admissible |
| 116 | Reed memo to Kim, 09/16/04 | Admissible |
| 117 | Burns memo to Kim, 04/16/86 | Admissible |
| 118 | McSheffrey memo to Burns, 04/17/86 | Admissible |
| 119 | McSheffrey memo to Fry, 04/24/86 | Admissible |
| 120 | McSheffrey memo to Burns, 05/21/86 | Admissible |
| 121 | Lai memo to Meunier, 04/20/88 | Admissible |
| 122 | Steiner memo to Kim, 11/02/89 | Admissible |
| 123 | Steiner memo to Kim, 03/27/90 | Admissible |
| 124 | Steiner memo to Meunier re Evaluation of Kim, 04/20/90 | Admissible |
| 125 | Steiner-Gooding email correspondence, 04/27/91 | Admissible |
| 126 | Steiner memo to Meunier, 04/29/91 | Admissible |
| 127 | PUP 622 Students memo to Steiner, 04/15/93 | Admissible |
| 128 | Steiner memo to Meunier, 05/24/93 | Admissible |
| 129 | Kim letter to Cayer, 05/03/94 | Admissible |
| 130 | Steiner memo to Glick, 01/31/96 | Admissible |
| 131 | Meunier memo to Glick, 02/11/98 | Admissible |

3.      *As to the following exhibits, the party against whom the exhibit is to be*

-22-

*offered objects to the admission of the exhibit and offers the objection stated below:*

a.    Plaintiff's Exhibits:

| No. | Description | Objection |
|-----|-------------|-----------|
| 20. | Declaration of Teresa Cameron | Cameron Declaration - Defendants object on the grounds that the declaration is hearsay and contains hearsay within hearsay; that it is irrelevant and unduly prejudicial because it contains numerous allegations unrelated to the 2002-03 promotion review process; that it contains character evidence inadmissible under FRE 404(b); that it contains improper lay testimony inadmissible under FRE 701; that it contains matters as to which the declarant has no personal knowledge. |
| 21. | Declaration of Ruth Yabes | Yabes Declaration - Defendants object on the grounds that the declaration is hearsay and contains hearsay within hearsay; that it is irrelevant and unduly prejudicial because it contains numerous allegations unrelated to the 2002-03 promotion review process; that it contains matters as to which the declarant has no personal knowledge. |
| 22. | Declaration of Edward Cook | Defendants object on the grounds that the declaration is hearsay and contains hearsay within hearsay; that it is irrelevant and unduly prejudicial because it contains numerous allegations unrelated to the 2002-03 promotion review process. |
| 23. | Declaration of Michael Kroellinger | Defendants object on the ground that the declaration is hearsay. |
| 24. | Lattie Coor Statement, 11/15/05 | Defendants object on the ground that the statement is hearsay. |
|  |  |  |
| 31. | Report of the tenure committee, 03/20/01 | Defendants object on the ground of relevance in that the report wasn't considered and played no part in |

| | | Crow's decision to deny Kim's promotion; and that it is inadmissible under FRE 403 because of the dangers of undue prejudice, confusion, and waste of time. |
|---|---|---|
| 32. | Meunier recommendation, 01/08/01 | Defendants object on the ground of relevance in that the report wasn't considered and played no part in Crow's decision to deny Kim's promotion; and that it is inadmissible under FRE 403 because of the dangers of undue prejudice, confusion, and waste of time. |
| 33. | CPAC Report, 12/12/2000 | Defendants object on the ground of relevance in that the report wasn't considered and played no part in Crow's decision to deny Kim's promotion; and that it is inadmissible under FRE 403 because of the dangers of undue prejudice, confusion, and waste of time. |
| 34. | Kihl memo to Meunier, 11/22/2000 | Kihl memo to Meunier, 11/22/00 - Defendants object on the ground of relevance in that the report wasn't considered and played no part in Crow's decision to deny Kim's promotion; and that it is inadmissible under FRE 403 because of the dangers of undue prejudice, confusion, and waste of time. |
| 38 | Defendant's Response to Non-Uniform Interrogatory No.1, Exhibit 1 | Hearsay, Relevance, Fed. R. Evid. 403. |

b. <u>Defendant's Exhibits:</u>

| No. | Description | Objection |
|---|---|---|
| 101. | ACD 509-02 | Relevance |
| 102. | Hackett-Kim email correspondence, 07/03.02 7 07/13/02 | Hearsay |

| 103. | SPLA Bylaw, 08/19/02 | Foundation, Relevance, Later version KIM#2/16-29 |
|---|---|---|
| 104. | SPLA Personnel Committee Report, 10/10/02 | Hearsay, Foundation; Attorney/Client Privilege Communication if admitted privilege is waived; Not disclosed |
| 105. | Landers-Glick-McCoy email correspondence, 10/10/02 | Hearsay, Foundation; Attorney/Client Privilege Communication if admitted privilege is waived; Non-disclosure |
| 106. | Hackett letter to Kim, 06/09/03 | Hearsay, Relevance |
| 107. | Bjork letter to Kim, 10/20/03 | Hearsay, Relevance, Foundation |
| 108. | Kim letter to Burstein, 10/28/03 | Hearsay, Relevance |
| 109. | Crow/Hackett letter to CAFT, 11/04/03 | Hearsay, Relevance, Foundation |
| 110. | Administrative Review report and recommendation, 04/26/02 | Hearsay, Relevance, Foundation, Non-disclosure |
| 111 | Meunier letter to Kim, 11/09/90 | Hearsay, Relevance |
| 112 | Meunier memo to Kim, 05/12/94 | Hearsay, Relevance |
| 113 | Meunier memo to Kim, 10/26/98 | Hearsay, Relevance |
| 114 | Meunier memo to Kim, 04/19/00 | Hearsay, Relevance |
| 115 | Meunier memo to Kim, 03/23/01 | Hearsay, Relevance |
| 116 | Reed memo to Kim, 09/16/04 | Hearsay, Relevance, Foundation |
| 117 | Burns memo to Kim, 04/16/86 | Hearsay, Relevance |

| 118 | McSheffrey memo to Burns, 04/17/86 | Hearsay, Relevance. Foundation |
| 119 | McSheffrey memo to Fry, 04/24/86 | Hearsay, Relevance, Foundation |
| 120. | MecSheffrey memo to Burns, 05/21/86 | Hearsay, Relevance, Foundation |
| 121. | Lai memo to Meunier, 04/20/88 | Hearsay, Relevance |
| 122. | Steiner memo to Kim, 11/02/89 | Hearsay, Relevance |
| 123. | Steiner memo to Kim, 03/27/90 | Hearsay, Relevance |
| 124. | Steiner memo to Muenier re Evaluation of Kim, 04/20/90 | Hearsay, Relevance |
| 125. | Steiner-Gooding email correspondence, 04/27/91 | Hearsay, Relevance, Foundation |
| 126. | Steiner memo to Meunier, 04/29/91 | Hearsay, Relevance |
| 127. | PUP 622 Students memo to Steiner, 04/15/93 | Hearsay, Relevance, Foundation |
| 128. | Steiner memo to Meunier, 05/24/93 | Hearsay, Relevance |
| 129. | Kim letter to Cayer, 05/03/94 | Relevance |
| 130. | Steiner memo to Glick, 01/31/96 | Hearsay within hearsay, Relevance, Foundation |
| 131. | Meunier memo to Glick, 02/11/98 | Foundation, Hearsay, Relevance |
| 132. | EEOC Charge | Relevance, Hearsay, Foundation |
| 133. | EEOC Dismissal and right-to-sue | Relevance, Hearsay, Foundation |

Each party hereby acknowledges by signing this joint Proposed Final Pretrial Order that any objections not specifically raised herein are waived.

## G.    DEPOSITIONS TO BE OFFERED

Plaintiff:

| Deposition of Milton Glick: | |
|---|---|
| Page:line-Page:line | Defendant's Objections |
| 21:10-22:21 | Relevance, calls for speculation, argumentative |
| 22:23-23:2 | |
| 24:13-24:24 | Lack of completeness under Fed. R. Evid. 106, need extend passage to 25:3 |
| 25: 8-25:15 | Argumentative, misstates evidence |
| 31:6-33:4 | |
| 33:9-33:12 | Lack of completeness under FRE 106; omits the answer; testimony should include 33, lines 13-22 |
| 34:19-37:20 | |
| 38:7-38:20 | |
| 41:19-42:12 | Relevance, cuts off answer, argumentative, calls for speculation, lack of personal knowledge |
| 42:19-44:18 | Relevance, argumentative, calls for speculation, lack of personal knowledge |
| 45:5-46:17 | |
| 48:16-49:7 | |

| | |
|---|---|
| 51:1-53:25 | |
| 54:11-56:13 | |
| 58:2-58:6 | |
| 60:19-61:17 | |
| 62:9-62:12 | |
| 63:14-64:5 | |
| 66:15-68:9 | |
| 70:2-71:21 | |
| 72:6-72:12 | |
| 74:8-74:18 | |
| 76:4-76:22 | Calls for speculation, lack of personal knowledge |
| 77:5-78:25 | |
| 79:15-85:7 | |
| 86:9-87:2 | |
| 87:25-88:8 | |
| 88:19-89:10 | |
| 90:1-92:6 | |
| 92:20-94:2 | |
| 94:19-96:4 | |
| 97:1-97:3 | Relevance, Fed. R. Evid. 403 |
| 97:15-97:25 | Relevance, Fed. R. Evid. 403 |
| 99:11-100:19 | |
| 105:2-106:6 | |
| 106:23-108:13 | |
| 109:7-110:25 | |

| 118:16-118:25 | |
|---|---|
| 126:10-126:24 | |

PLAINTIFF'S POSITION ON THE ADMISSIBILITY:  Any objection not raised during the deposition was waived.  Fed. R. Civ. P. 28(c)(2) states "[a]n objection at the time of the examination – whether to evidence . . . or to an other aspect of the deposition – must be noted on the record, but the examination still proceeds; the testimony is taken subject to the objection."  The only exceptions are under Fed. R. Civ. P. 32(d)(3) are competence of the witness or competence, relevancy, or materiality of the testimony. Wright, FEDERAL PRACTICE & PROCEDURE, § 2113.  Any objection that could have been cured at the deposition, *e.g*, leading or suggestive; ambiguous or uncertain; compound; assume facts not in evidence; call for a narration; call for speculation or conjecture; or argumentative, are waived if not raised at the deposition.  *Id.*

Defendant:

| **Deposition of Milton Glick:** |
|---|
| Page:line-Page:line |
| 4:11-4:19 |
| 8:16-9:12 |
| 9:23-12:9 |
| 16:7-16:25 |
| 23:21-25:7 |
| 26:20-27:3 |
| 27:23-28:15 |
| 35:12-37:20 |
| 54:11-56:13 |
| 57:3-58:4 |
| 71:15-21 |

| |
|---|
| 83:12-85:7 |
| 90:1-91:23 |
| 98:1-99:10 |
| 115:6-116:13 |
| 118:16-120:16 |
| 122:4-14 |

*The party offering the deposition must provide the Court with a copy of the offered deposition testimony, highlighted in color.  Objections must be made by page and line number and state the grounds for objection.  Fed. R. Civ. P. 34(a)(4) portions are treated the same.*

Each party hereby acknowledges by signing the joint Proposed Final Pretrial Order that any depositions not listed as provided herein will not be allowed, absent good cause.

**H.    MOTIONS IN LIMINE**

All motions in limine were filed as separate pleadings and responded to in accordance with the Order Setting Final Pretrial Conference.

**I.    LIST OF PENDING MOTIONS**

Other than motions in limine, no motions are pending.

**J.    PROCEDURES FOR EXPEDITING TRIAL**

The parties have stipulated to the admissibility of many exhibits.

**K.    ESTIMATED LENGTH OF TRIAL**

   __4___ hours for opening statements and closing arguments

   _12____ hours for Plaintiff's case, including cross-examination of other parties' witnesses.

   _13____ hours for Defendant's case, including cross-examination of other parties' witnesses.

   __1___ hours for Plaintiff's rebuttal.

-30-

  30   TOTAL ESTIMATED TIME

**L.    JURY DEMAND**

The parties stipulate that the request was timely and properly made.

**M.    JOINT STATEMENT OF THE CASE**

*See* separately filed Joint Statement of the Case.

**N.    JOINT PROPOSED VOIR DIRE QUESTIONS**

*See* separately filed Joint Proposed Voir Dire Questions

**O.    JOINT PROPOSED JURY INSTRUCTION**

*See* separately filed Joint Proposed Jury Instructions

**P.    PROPOSED FORM OF VERDICT**

*See* separately filed Plaintiff's Proposed Form of Verdict and Defendant's
Proposed Form of Verdict.

**Q.    DISAGREEMENTS ABOUT PROPOSED STATEMENT, VOIR DIRE, INSTRUCTIONS, OR FORMS OF VERDICT**

*See* separately filed Joint Statement of the Case, Joint Proposed Voir Dire, Joint
Proposed Jury Instructions, and each party's proposed forms of verdict.

**R.    FORMAT OF SUBMISSIONS**

The joint statement of the case, proposed voir dire questions, proposed jury
instructions, and forms of verdict must be submitted in WordPerfect® 9.0 (or compatible)
format by email to Murguia_Chambers@azd.uscourt.gov.

**S.    CERTIFICATIONS**

The undersigned counsel for each of the parties in this action do hereby certify and
acknowledge the following:

1.    All discovery has been completed.

2.    The identity of each witness has been disclosed to opposing counsel.

3.      Each exhibit listed herein: (1) is in existence; and (2) has been disclosed and shown to opposing counsel.

4.      The parties have complied in all respects with the mandates of the Court's Rule 16 Scheduling Order and Order Setting Final Pretrial Conference.

5.      The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously ordered to the contrary).

6.      The parties acknowledge that once this Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

## T.      INFORMATION FOR COURT REPORTER

1.      *Acronyms*

a.      SPLA – School of Planning and Landscape Architecture

b.      CAFT – Committee on Academic Freedom and Tenure

c.      UPTC – Univeristy Promotion and Tenure Committee

d.      CAED – College of Architecture and Environmental Design

e.      ABOR – Arizona Board of Regents.

2.      *Names*

a.      Meunier – prounounced "MOON yay"

b.      Pijawka – prounounced "PE offka"

c.      Hemalata Dandekar

-32-

Dated this 2nd day of March 2009,

LAW OFFICES OF WILLIAM R HOBSON, P.C.
LAW OFFICES OF KEVIN KOELBEL, P.C.
THE KIM LAW FIRM, L.L.C.

_____
William R. Hobson
Kevin Koelbel
Matthew Kim
Attorneys for Plaintiff

ARIZONA ATTORNEY GENERAL'S OFFICE

_____
Michael Goodwin
Assistant Attorney General
Attorney for Defendant

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Based on the foregoing,

**IT IS HEREBY ORDERED** that this Proposed Final Pretrial Order jointly submitted by the parties is hereby **APROVED** and **ADOPTED** as the official Pretrial Oder of this Court.

DATED this _____ day of _____, 2009.


_____
Mary H. Murguia
United States District Judge